UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF OKLAHOMA

| | | | |
|---|---|---|---|
| IN RE: | ) | | |
| | ) | | Filed/Docketed |
| BROWN, DANIEL DUANE, | ) | Case No. 12-10619-R | Jul 03, 2013 |
| | ) | Chapter 7 | |
| Debtor. | ) | | |

| | | |
|---|---|---|
| STUART C. IRBY CO., | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | Adv. No. 12-1042-R |
| | ) | |
| DANIEL DUANE BROWN, | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER GRANTING
## MOTION FOR PARTIAL JUDGMENT ON THE PLEADINGS

Before the Court is the Motion for Partial Judgment on the Pleadings filed by Debtor and Defendant Daniel Duane Brown ("Brown") on January 10, 2013 ("Motion")(Adv. Doc. 38); the Response to Motion for Partial Judgment on the Pleadings filed by Plaintiff Stuart C. Irby Co. ("Irby") on January 31, 2013 ("Response")(Adv. Doc. 43); and the Reply to Plaintiff's Response to Motion for Partial Judgment on the Pleadings filed by Brown on February 5, 2013 ("Reply")(Adv. Doc. 45).

Irby timely filed a complaint against Brown seeking a declaration that Brown's debt to Irby was excepted from discharge under 11 U.S.C. § 523(a)(4).[1] More than five months later, Irby filed an amended complaint in which it asserted, for the first time, that the debt was excepted from discharge under § 523(a)(2). Irby also asserted, for the first time, five

---

[1] Unless otherwise indicated, all statutory references made herein are to sections of Title 11 of the United States Code.

claims arising under state law.  Brown contends that judgment should be entered in his favor on the § 523(a)(2) claim because the claim was not timely asserted pursuant to § 523(c) and Bankruptcy Rule 4007(c).  Brown also seeks dismissal of the non-bankruptcy claims as beyond this Court's jurisdiction, as enjoined by the discharge entered in this case, and/or as redundant.  In its Response, Irby argues that the amended complaint "relates back" to the original complaint, and therefore should be deemed timely-filed.[2]  Irby also argues that this Court has jurisdiction to adjudicate its non-bankruptcy claims and that the claims have not been discharged.

**Procedural History**

On March 9, 2012, Brown filed a petition for relief under Chapter 7 of the Bankruptcy Code.  The deadline for a creditor to commence an adversary proceeding to determine dischargeability of a debt under § 523(a)(2), (a)(4) and/or (a)(6) was June 11, 2012.[3]  Irby timely filed a Complaint Objecting to Dischargeability of Indebtedness ("Complaint") (Adv. Doc. 1).  The substantive allegations contained in the three-page Complaint are as follows:

Brown is an officer of Central Electric Company of Tulsa, Inc. ("Central").[4]

---

[2]In its Response, Irby also contends that Brown waived/forfeited his statute of limitations defense by failing to plead it as an affirmative defense in his Answer to First Amended Complaint (Doc. 35), and also by failing to deny the allegation that "[p]ursuant to 11 U.S.C.A. § 523(a)(2), Brown's debts to Irby are not subject to discharge."  Response at 5.  After Irby's Response was filed, the Court granted Brown leave to amend his Answer to First Amended Complaint to correct these oversights as scrivener's errors.  Brown filed his First Amended Answer to First Amended Complaint (Doc. 48) on March 7, 2013, rendering Irby's waiver/forfeiture argument moot.

[3]See Fed. R. Bankr. P. 4007(c) (complaints must be filed no later than 60 days after the first date set for a meeting of creditors).

[4]Complaint, ¶ 5.

Brown, individually and on behalf of Central, applied for and obtained a line of credit with Irby whereby Irby agreed to provide Central and Brown with electrical supplies and/or building materials in exchange for Central's and Brown's promise to pay for said supplies and/or materials.[5]

Upon information and belief, Central acted as subcontractor on numerous projects on which Irby supplied electrical supplies and/or building materials.[6]

Central and Brown have failed to pay for the electrical supplies and/or building materials provided by Irby and are indebted to Irby in an amount in excess of $100,000.[7]

Under Oklahoma law, amounts payable under any building contract are required to be held as trust funds for the payment of claims for labor and materials supplied to or incorporated in the construction project. Thus, the use of construction funds for any other purpose is a violation of the trust and a breach of the contractor's fiduciary duty. 42 O.S. § 152-53.[8]

Upon information and belief, Brown, as a managing officer of Central, breached his fiduciary duty by paying and/or disbursing construction trust funds for purposes other than the payment of supplies and materials provided by Irby which were incorporated into the construction projects. Brown's debt to Irby arose out of Brown's breach of his fiduciary duty with regard to the construction trust funds and the debt is therefore non-dischargeable under 11 U.S.C.A. § 523(a)(4).[9]

On December 3, 2012, Brown filed an answer to the Complaint, denying that he was liable for Central's debt and denying that he breached a fiduciary duty to Irby.[10] As an

---

[5]Id., ¶ 6.

[6]Id., ¶ 7.

[7]Id., ¶ 8.

[8]Id., ¶ 9.

[9]Id., ¶ 10.

[10]Answer to Complaint (Adv. Doc. 31) at 2. Although Irby filed the Complaint on June 11, 2012, it failed to serve a summons and the Complaint on Brown in a timely manner. After the Court extended the time in which to perfect service of process, Irby served Brown

affirmative defense, Brown alleged that the Complaint failed to state a breach of fiduciary duty claim.[11]

On December 4, 2012, the day after Brown filed his answer to the Complaint, Irby filed a First Amended Complaint ("Amended Complaint") (Adv. Doc. 33). In the Amended Complaint, Irby restated the allegations made in the original Complaint, and again sought relief under § 523(a)(4),[12] but only as a "[s]econd basis for objection to the discharge."[13] Apparently recognizing that only a portion of the total debt was subject to exception from discharge for misapplication of trust funds,[14] Irby asserted, as its *primary* objection to discharge, that Brown defrauded Irby into extending credit, invoking § 523(a)(2). The Amended Complaint asserts the following conduct, events, and transactions (paraphrased herein for brevity):[15]

> Starting in 1995, Irby sold electrical materials to Central on open account, and Brown personally guaranteed Central's obligations to Irby.[16]

---

with an alias summons and the Complaint on November 4, 2012.

[11]Id., ¶ 12.

[12]See Amended Complaint, ¶¶ 62-68; ¶¶ 86-87.

[13]Id. at 7.

[14]See id., ¶ 67 ("Brown's debt to Irby arose, *in part*, out of his breach of his fiduciary duty with regard to the construction trust funds.") (Emphasis added).

[15]For the purpose of the Motion, the Court must assume the truth of these allegations and all reasonable inferences derived therefrom. See Sanders v. Mountain America F.C.U., 689 F.3d 1138, 1141 (10th Cir. 2012).

[16]See Amended Complaint, ¶¶ 7-11.

In early 2009, Central owed Irby over $600,000, and was delinquent in payments.[17]

Brown sought to compromise the debt and offered Irby various means of securing payment of the outstanding debt, including causing his wholly owned corporation, DJ Brown, Inc. ("DJBI") to execute a guaranty secured by a mortgage on commercial real estate ("Collateral") that Brown represented was owned by DJBI.[18]

As part of the compromise, Irby filed a lawsuit against Central and Brown, and Central and Brown executed an agreed Judgment in favor of Irby in the amount of $600,000 with interest accruing at 13% per annum.[19]

In addition, Brown and Central executed a promissory note in favor of Irby in the principal amount of $600,000 ("First Note"). Brown also caused DJBI to guarantee payment of the First Note and of any future indebtedness, and to secure the guaranty with a mortgage on the Collateral ("Mortgage").[20]

Orally and in the Mortgage, Brown represented to Irby that DJBI owned the Collateral and that the Collateral was free and clear of liens.[21]

Brown/Central applied to Irby for a new extension of credit, and executed a credit agreement ("Credit Agreement") under which Irby agreed to sell materials to Central in the future. Brown personally guaranteed Central's payment under the Credit Agreement.[22]

At some point, the balance due under the Credit Agreement was reduced to a second promissory note ("Second Note").[23]

---

[17] See id., ¶ 12.

[18] See id., ¶¶ 14-19.

[19] See id., ¶¶ 20-24.

[20] See id., ¶¶ 25-32.

[21] See id., ¶ 33.

[22] See id., ¶¶ 34-38.

[23] See id., ¶¶ 44-47.

After the Second Note was executed, Brown and Central purchased additional materials and accrued additional debt under the Credit Agreement ("Open Account").[24]

In reliance on the representations that DJBI owned the Collateral and that the Collateral was free and clear of liens, Irby did not demand additional collateral to secure Central's indebtedness nor did Irby pursue other collection options. Also in reliance on the representations, Irby continued to sell Central materials on open account.[25]

After Central defaulted on the First and Second Notes and became delinquent on the Open Account, Irby learned that a few days before DJBI executed the Mortgage in favor of Irby, Brown had caused DJBI to merge into a newly formed company, Central Real Estate, LLC ("CRE"). Thus, on the date of the Mortgage, CRE, not DJBI, owned the Collateral. Moreover, prior to the date DJBI executed the Mortgage, CRE had borrowed $570,958.00 from a bank and granted the bank a first mortgage on the Collateral (the "CRE Mortgage").[26]

Based upon these allegations, Irby sought relief under § 523(a)(2) and made the following common law claims: (1) Breach of First Promissory Note; (2) Breach of Second Promissory Note; (3) Breach of Credit Agreement and Brown Guaranty; (4) Fraudulent and Negligent Misrepresentation; and (5) Breach of Fiduciary Duty (collectively the "Non-Bankruptcy Claims").[27]

Attached to the Amended Complaint were copies of the Agreed Journal Entry of Judgment, the First Note, DJBI's Guaranty Agreement, the Mortgage, the Commercial Credit

---

[24] See id., ¶¶ 48-50.

[25] See id., ¶¶ 39-48; ¶¶ 80-84.

[26] See id., ¶¶ 54-61.

[27] See id. at 8-9.

Application, the Second Note, various statements of account, the Terms and Conditions of Sale, a Certificate of Merger, and the CRE Mortgage.[28]

On March 7, 2013, Brown filed his First Amended Answer to First Amended Complaint (Adv. Doc. 48), closing the pleadings and rendering the matter ripe for decision on the Motion.

**Jurisdiction**

The Court has jurisdiction to adjudicate Brown's Motion pursuant to 28 U.S.C. §§ 1334, 157(a) and (b)(2)(I), and Local Civil Rule 84.1(a) of the United States District Court for the Northern District of Oklahoma.[29]

---

[28] See id., Exhibits 1-10.

[29] Brown contends that the Court lacks jurisdiction to enter a money judgment in favor of Irby in the event the Court concludes that the debt is not discharged. See First Amended Answer to First Amended Complaint, ¶ 3, *citing* Stern v. Marshall, 131 S.Ct. 2594, 2615 (2011). The Tenth Circuit Court of Appeals has specifically held that bankruptcy courts possess jurisdiction to enter money judgments against debtors in adjudicating creditors' non-dischargeability claims. See Johnson v. Riebesell (In re Riebesell), 586 F.3d 782, 792-95 (10th Cir. 2009). Stern, which addressed jurisdiction over a *debtor's* common law action against a creditor that was unrelated to the creditor's claim, did not overtly or covertly overrule Riebesell. Following Riebesell, the Court concludes that it has jurisdiction to determine and enter judgment on all issues related to Irby's § 523(a)(2) and (a)(4) claims, including the validity and amount of the debt, as well as dischargeability.
  Brown also seeks dismissal of the Non-Bankruptcy Claims for lack of jurisdiction. As the Court understands Irby's argument in its Response, its intent in asserting these claims is to liquidate the *amount* of non-dischargeable debt if Irby's objections to dischargeability are sustained. And taking Brown's Stern-based jurisdiction argument to heart, Irby advanced the Non-Bankruptcy Claims as a vehicle for claims to be finally determined by the District Court in the event this Court concluded that it is prohibited from entering a money judgment against Brown. Response at 15-19. Because the Court concludes that it is empowered to enter money judgments in dischargeability proceedings, Irby need not assert independent state law claims in order to accomplish a complete resolution of the debtor-creditor relationship between these two parties.
  In any event, the narrow scope of the Motion is well within the Court's jurisdiction,

**Discussion**

Brown moves for a partial judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.[30] Judgment may be entered to dispose of a distinct claim in a multi-claim complaint if the content of the complaint and exhibits thereto, along with matters which may be judicially noticed, demonstrate that the plaintiff's claim cannot succeed as a matter of law.[31] The standard for considering a motion for judgment on the pleadings is identical to that used to consider motions to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure.[32] The Court must "accept all facts pleaded by the non-moving party as true and grant all reasonable inferences from the pleadings in that party's favor. Judgment on the pleadings is appropriate only when the moving party has clearly established that no material issue of fact remains to be resolved and the party is entitled to judgment as a matter of law."[33]

---

as Brown requests determinations premised solely on provisions of the Bankruptcy Code and Bankruptcy Rules. Determining the effect of time limitations and relation-back provisions contained in the Bankruptcy Rules on claims arising under the Bankruptcy Code, and the effect of Brown's discharge on the Non-Bankruptcy Claims, are core bankruptcy issues.

[30] Fed. R. Civ. P. 12(c) (made applicable to this proceeding by Bankruptcy Rule 7012(b)).

[31] See, e.g., Porous Media Corp. v. Pall Corp., 186 F.3d 1077, 1079 (8th Cir. 1999); Does I through III v. District of Columbia, 238 F.Supp.2d 212, 216-17 (D. D.C. 2002) (court may take judicial notice of the result of prior litigation from the public record).

[32] See Park University Enterprises, Inc. v. American Casualty Co., 442 F.3d 1239, 1244 (10th Cir. 2006).

[33] Sanders v. Mountain America F.C.U., 689 F.3d 1138, 1141 (10th Cir. 2012) (quotation marks and citations omitted).

A.  Section 523(a)(2) claim

A bankruptcy discharge enjoins creditors from taking certain actions to establish or collect dischargeable debts.[34] Section 523 of the Bankruptcy Code lists debts that are excepted from discharge. Some debts are non-dischargeable by virtue of "self-executing" statutory exceptions. Creditors owed domestic support obligations and other debts incurred in the course of divorce proceedings,[35] for example, need not obtain a bankruptcy court order declaring them non-dischargeable. Such debts are categorically excepted from discharge, and if the parties are uncertain as to whether the debt falls within the scope of an exception, they may seek court intervention, and such actions can be commenced at any time.[36]

All other debts, however, are automatically discharged *unless* the creditor (1) objects to dischargeability of the debt in a timely filed complaint and (2) is successful in establishing the elements of the dischargeability exception. Section 523(c) provides–

> the debtor shall be discharged from a debt of a kind specified in paragraph (2), (4), or (6) of subsection (a) of this section, unless, on request of the creditor to whom such debt is owed, and after notice and a hearing, the court determines such debt to be excepted from discharge under paragraph (2), (4), or (6), as the case may be, of subsection (a) of this section.[37]

Bankruptcy Rule 4007(c) fixes the time in which a § 523(c) complaint must be filed. It provides–

---

[34] See 11 U.S.C. § 524(a).

[35] See 11 U.S.C. § 523(a)(5) and (a)(15).

[36] See Fed. R. Bankr. P. 4007(b).

[37] 11 U.S.C. § 523(c).

9

[A] complaint to determine the dischargeability of a debt under § 523(c) shall be filed no later than 60 days after the first date set for the meeting of creditors under § 341(a). The court shall give all creditors no less than 30 days' notice of the time so fixed in the manner provided in Rule 2002. On motion of a party in interest, after hearing on notice, the court may for cause extend the time fixed under this subdivision. The motion shall be filed before the time has expired.[38]

Irby filed its original Complaint seeking relief under § 523(a)(4) on June 11, 2012. The original Complaint was timely filed under Bankruptcy Rule 4007(c). Irby did not assert its § 523(a)(2) claim until December 4, 2012, however. The Amended Complaint was filed one day after Brown filed his Answer to the original Complaint, but more than five months after the Bankruptcy Rule 4007(c) deadline for filing objections to dischargeability.[39] Brown argues that Bankruptcy Rule 4007(c) imposes a firm time limitation for filing claims under § 523(c) and because Irby's § 523(a)(2) claim was filed outside that limitation, Irby is barred from pursuing the § 523(a)(2) claim.

---

[38] Fed. R. Bankr. P. 4007(c).

[39] To the extent, if any, that Irby relies upon Rule 15(a) of the Federal Rules of Civil Procedure (made applicable to adversary proceedings by Bankruptcy Rule 7015) to contend that the Amended Complaint was timely, the reliance is misplaced. See Response at 3-4. Rule 15(a) determines whether leave of court is required in order to file an amended pleading. It provides, in pertinent part, that "[a] party may amend its pleading once as a matter of course within . . . (B) if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading[.]" Fed. R. Civ. P. 15(a)(1)(B). Irby states that the Amended Complaint was filed "well within the 21-day period" after Brown filed his Answer, but that fact is relevant only to the issue of whether Irby had to request leave of court before filing the Amended Complaint, and has no bearing on whether the claims asserted in the amended pleading are time-barred.

Irby contends, however, that the § 523(a)(2) claim "relates back" to the date of the original Complaint and therefore is not time-barred. Rule 15(c), which specifically addresses "relation back" of amendments, provides, in relevant part, that–

> [a]n amendment to a pleading relates back to the date of the original pleading when: . . . the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out–or attempted to be set out–in the original pleading[.][40]

Relation-back issues arise when an amendment adds either a new theory of recovery (*i.e.*, a claim independent of any originally designated claim) that would otherwise be time-barred, or an "entirely distinct" set of facts from those set forth in the timely-pleaded claim, or both.[41] The complimentary purposes of the "relation back" rule are to, on one hand, preserve claims asserted in an amended pleading that might otherwise be barred by an applicable statute of limitations if the original pleading gave defendant sufficient notice of the nature of the claim, and, on the other hand, bar claims of which defendant had insufficient notice as of the expiration of the statute of limitations.[42]

"The rationale of Rule 15(c) is that a party who has been notified of litigation concerning a particular occurrence has been given all the notice that statutes of limitations

---

[40] Fed. R. Civ. P. 15(c)(1)(B).

[41] Wilson Family Foods, Inc. v. Brown (In re Brown), 467 B.R. 536, 541 (Bankr. M.D. Ga. 2012) ("even where an amended complaint tracks the legal theory of the first complaint, claims that are based on an 'entirely distinct set' of factual allegations will not relate back") (citations omitted).

[42] See Brown, 467 B.R. at 540 ("The issue of relation-back is important only insofar as amendments add a new claim that would be time-barred if the amendment did not relate back to the original filing date.").

were intended to provide. Thus, the relation back analysis focuses on the notice given by the general fact situation stated in the original pleading."[43] In determining whether an amended pleading relates back, the Court may consider whether the evidence necessary to support the new claim could be introduced in support of the original claim,[44] and whether the measure of damages is the same.[45]

Irby's original Complaint set forth a very limited set of factual allegations, *i.e.*, that as an officer of Central, Brown purchased electrical materials from Irby; Brown incorporated the materials into construction projects for which Central was paid; Brown failed to pay Irby from the proceeds of the construction projects; under Oklahoma law, the proceeds were to be held by Central/Brown in trust; and Brown diverted trust funds to his own use. Under this set of facts, Irby alleged that the debt arising from such "fraud or defalcation while acting in a fiduciary capacity" was non-dischargeable under § 523(a)(4). Under this theory, Irby's evidence would be limited to establishing that while Brown was the manager of Central, Central purchased materials from Irby; Central incorporated the materials into various construction projects; Central was paid for the construction projects but failed to pay Irby for the materials from the proceeds of such projects; and that Irby is entitled to or did file a lien

---

[43] Centier Bank v. Young (In re Young), 428 B.R. 804, 810 (Bankr. N.D. Ind. 2010) (quotation marks and citations omitted).

[44] See Re/Max Properties, Inc. v. Barnes (In re Barnes), 96 B.R. 833, 837 (Bankr. N.D. Ill. 1989) ("The basic test of relation back is whether the evidence with respect to the second set of allegations [i.e., those contained in an amended complaint] could have been introduced under the original complaint, liberally construed.") (citation omitted).

[45] Brown, 467 B.R. at 541.

on the construction projects to secure payment for the materials. Irby's damages would be limited to lienable claims.[46]

The Amended Complaint adds § 523(a)(2) as a new theory under which Brown's debt is alleged to be excepted from discharge. Section 523(a)(2)(A) excepts from discharge any debt "for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by . . . false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition."[47] Section 523(a)(2)(B), which excepts debts obtained by fraudulent statements of a debtor's or insider's financial condition, requires those types of statements to be in writing.[48]

The fraud alleged in the Amended Complaint does not arise out of the core facts alleged in the original Complaint, however. The gravamen of Irby's § 523(a)(2) claim is that Brown (1) allegedly falsely represented, orally and in writing, that his wholly-owned company, DJBI, owned the Collateral free and clear of liens; (2) enticed Irby to accept the Collateral as security for Central's delinquent debt; and (3) persuaded Irby to continue supplying Central with materials by securing payment of the open account with the same allegedly unencumbered Collateral. The sparse set of circumstances set forth in the original Complaint focuses solely on the transaction wherein Irby supplied materials to

---

[46]See Duncan v. Neal (In re Neal), BAP No. WO-05-029, 2006 WL 452340 (B.A.P. 10th Cir. Feb. 22, 2006); Shawver & Son, Inc. v. Tefertiller, 1989 OK 60, 772 P.2d 396.

[47]11 U.S.C. § 523(a)(2)(A).

[48]11 U.S.C. § 523(a)(2)(B).

13

Central/Brown for use in its construction business and Brown failed to pay Irby from the proceeds of projects into which the materials were incorporated.[49]

The only overlapping fact between the two claims is that Brown agreed to pay Irby for materials and failed to do so.[50] Glaringly absent from the original Complaint is any reference to the series of financial transactions that underlie the fraud charge: Irby's filing of a collection lawsuit; Brown's proposed settlement; the entry of an agreed judgment; Brown's execution of the First Note; Brown's execution of a Guaranty on behalf of himself and DJBI; DJBI's execution of the Mortgage; DJBI's merger with CRE; and CRE's prior execution of a mortgage to its lender. More importantly, the original Complaint does not give Brown any notice of the conduct that constitutes the central element of the alleged fraud– misrepresenting the ownership of and prior mortgage on the Collateral.

---

[49]The facts of this case are similar to those in Centier Bank v. Young (In re Young), 428 B.R. 804 (Bankr. N.D. Ind. 2010). In Young, a creditor timely filed a complaint objecting to discharge of debts under § 523(a)(2), (a)(4) and (a)(6). The set of facts underlying the objection concerned the debtor, a construction contractor, submitting allegedly false sworn statements to the creditor bank in order to obtain draws on a line of credit. In an amended complaint, filed after the Rule 4007(c) deadline, the bank added two counts based upon "documentation submitted, and representations made, prior to [the bank's] granting of loans in the first place and/or in a context other than construction draw submissions." Id. at 811. The bankruptcy court found that the "transactions and facts referenced in Count I of the original complaint and Counts II and III of the amended complaint are entirely different, in terms of both temporal and substantive elements. There is nothing in the original complaint which can be deemed to have placed [the debtor] on notice of the transactions which are the subjects of Counts II and III." Id. Accordingly, the bankruptcy court concluded that Counts II and III of the amended complaint did not relate back to the set of facts set forth in the original complaint, and therefore those claims were time-barred.

[50]See, e.g., Response at 11-12.

In order to establish fraud at trial, Irby would have to prove that Brown made a false representation concerning the Collateral with the intent to mislead Irby and that Irby justifiably relied on the representation to its detriment.[51] None of these elements are suggested by evidence that would be admissible in a trial of Irby's § 523(a)(4) claim.[52] Notably, Brown's representations concerning the ownership and status of the Collateral is not remotely relevant to the claim that Brown misapplied trust funds. In addition, Irby alleges as damages from fraud all the outstanding debt owed by Central and Brown to Irby under the Judgment, Notes, and Credit Agreement. In a trial of the § 523(a)(4) claim, Irby's proof of damages would be limited to lienable claims.

In summary, Irby's Amended Complaint does not come within the terms of Rule 15(c)'s relation-back standard. The original Complaint did not give Brown fair notice of the conduct, transaction, or occurrence underlying Irby's fraud claim.[53] Because the § 523(a)(2)

---

[51] See Johnson v. Riebesell (In re Riebesell), 586 F.3d 782, 789 and n.3 (10th Cir. 2009).

[52] Irby contends that misappropriation of trust funds is a species of fraud, and therefore Brown should have been on notice, as of the date of the original Complaint, that fraud was at issue in the case. Pleading fraud, however, requires stating "with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b) (made applicable to this proceeding by Fed. R. Bankr. P. 7009). Nothing in the original Complaint, liberally construed, could have possibly alerted Brown that Irby intended to charge him with granting a fraudulent mortgage as security for payment of an agreed judgment, two notes, and an open account.

[53] Irby argues that Brown received adequate notice of the § 523(a)(2) claim during proceedings related to its motion to extend the time to serve Brown with the original Complaint, when it stated that it had additional grounds under which to object to discharge of the debt and would be seeking leave to amend. See Response at 3. Without addressing whether such informal notice could be considered adequate notice of a fraud claim, the Court notes that this so-called notice occurred many months after the Rule 4007(c) deadline, and therefore was not timely either.

claim does not relate back to the date of the original Complaint, it was not timely asserted. Brown is entitled to judgment in his favor on Irby's § 523(a)(2) claim as a matter of law because the claim is time-barred.[54]

---

In addition, Irby contends that Brown had to be aware of the fraudulent nature of the mortgage when he granted it, and therefore should have known that Irby might bring a fraud claim against him. See Response at 8-9. "If Brown knew he had obtained credit from Irby based on those false pretenses, then he would have certainly been 'on fair notice' of the potential for fraud-based claims to arise from his actions." Response at 9. The fair notice rationale for the relation-back doctrine requires the *plaintiff* to give fair, and timely, notice that it *actually is* seeking relief on a claim, regardless of a defendant's alleged awareness of a potential claim.

Finally, Irby argues that its current counsel did not learn that the Collateral had been previously mortgaged until after the June 11, 2013, deadline, and therefore it could not have asserted the fraud claim in a timely manner. See Response at 10. The CRE mortgage was recorded in the Tulsa County Clerk's land records on March 16, 2009, however (see Exhibit 10 to Amended Complaint), and Irby can hardly argue that such fact was unknowable until after June 11, 2013.

[54]In passing, Brown asserts in his Motion that the Bankruptcy Rule 4007(c) deadline for filing complaints is jurisdictional. See Motion at 4, citing cases. The United States Supreme Court has held, however, that the failure to comply with time limitations for filing objections to discharge does not deprive a court of jurisdiction. See Kontrick v. Ryan, 540 U.S. 443 (2004). In Kontrick, a debtor, against whom a judgment denying discharge under § 727(a) was entered, sought to nullify the judgment on the ground that the complaint objecting to discharge was filed after the deadline for filing such complaints set forth in Bankruptcy Rule 4004(a). The debtor argued that the judgment was void because compliance with Rule 4004(a)'s deadline was jurisdictional. The Supreme Court held that Bankruptcy Rule 4004(a) was a "claim-processing rule" rather than a restraint on the court's jurisdiction, and therefore, unlike true jurisdictional defenses, the limitations defense could be forfeited or waived if not timely asserted. Id. at 455-60. Because the debtor had not complained about the tardiness of the complaint until after judgment had been entered, the Supreme Court concluded that the debtor had forfeited his limitations defense.

Because Bankruptcy Rule 4007(c)'s time limitation is identical to that of Bankruptcy Rule 4004(a), this Court concludes that the failure to timely file a complaint under Bankruptcy Rule 4007 is likewise not a jurisdictional defect. The Court is aware that the Tenth Circuit Court of Appeals has previously held that the rule is jurisdictional, but that decision predates Kontrick, and is unpublished and therefore not binding on this Court. See First Nat'l Bank in Okeene v. Barnes, No. 91-6183, 1992 WL 33251 (10th Cir. Feb. 18, 1992) (unpublished); 10th Cir. R. 32.1 (unpublished decisions are not precedential).

B.  Non-Bankruptcy Claims

In the Amended Complaint, Irby alleges that Brown breached the terms of First and Second Notes, the Credit Agreement, and the Guaranty by failing to pay amounts owed thereunder, and seeks an award of damages equal to the outstanding principal balances and accrued interest.[55] Based on the allegations made in support of its § 523(a)(2) claim, Irby also seeks damages for fraudulent and negligent misrepresentation.[56] And based upon the allegations made in support of its § 523(a)(4) claim, Irby seeks damages for breach of the Oklahoma's construction trust fund statutes.[57] Finally, Irby seeks recovery of attorney fees and other costs of collection pursuant to the terms of the notes, Credit Agreement and Guaranty.[58]

On June 19, 2012, Brown was granted a discharge under § 727 of the Bankruptcy Code of all debts that arose prior to the filing of the bankruptcy except for debts declared

---

For clarity, then, this Court emphasizes that its disposition of the § 523(a)(2) claim herein is not premised upon a lack of jurisdiction, but rather upon the legal conclusion that the untimely filing of the claim constitutes a complete defense.

[55]Amended Complaint at 8, ¶¶ 69-78.

[56]Id. at 9, ¶¶79-84.

[57]Id. at 9-10, ¶¶ 85-87.

[58]Id. at 10, ¶¶ 88-90. Although Irby also claims to be entitled to recover attorney fees and costs if successful in its misrepresentation and breach of fiduciary duty claims, it cites no statutory or other basis for such an entitlement. Oklahoma adheres to the American Rule which provides that each litigant bears the cost of its own legal representation unless fee shifting is authorized by contract or statute. See, e.g., Barnes v. Oklahoma Farm Bureau Mut. Ins. Co., 2000 OK 55, 11 P.3d 162, 178-81 (describing the American Rule and its very limited equitable exception allowing fees to be recovered from party engaging in vexatious or oppressive litigation practices).

17

non-dischargeable by judicial determination or debts automatically excepted from discharge by operation of law. The discharge –

> voids any judgment at any time obtained, to the extent that such judgment is a determination of the personal liability of the debtor with respect to any debt discharged under section 727 . . . of this title, . . . ; [and]

> operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor[.][59]

Damages for state law breach of contract claims are not excepted from discharge under § 523(a)(2) or (a)(4).[60] Accordingly, debts arising from Claim No. 1: Breach of First Promissory Note; Claim No. 2: Breach of Second Promissory Note; and Claim No. 3: Breach of Credit Agreement and Brown Guaranty were discharged on June 19, 2012, and Irby is barred from pursuing any action to establish personal liability on those claims. Accordingly, Brown is entitled to judgment as a matter of law on Claim Nos. 1, 2, and 3 of the Amended Complaint.

In Claim No. 4, Irby seeks damages arising from fraudulent and negligent misrepresentation. True, § 523(a)(2) excepts from discharge debts obtained through fraudulent misrepresentation, but the Court has already determined that Irby's § 523(a)(2)

---

[59] 11 U.S.C. § 524(a)(1) and (2).

[60] Some creditors attempt to have breach of contract damages declared non-dischargeable as debts resulting from "willful and malicious injury by the debtor to another entity or to the property of another entity" under § 523(a)(6), claiming that the debtor intentionally breached the contract and knowingly caused financial harm to the creditor. However, "an intentional breach of contract, without more, is not the type of injury addressed by § 523(a)(6)." Hernandez v. Musgrave (In re Musgrave), No. CO-10-049, 2011 WL 312883, at *11 (B.A.P. 10th Cir. Feb. 2, 2011). In any event, Irby has not asserted a claim under § 523(a)(6).

claim is barred as untimely under Bankruptcy Rule 4007(c).  Neither § 523(a)(2) or (a)(4) render damages arising from negligence non-dischargeable,[61] and therefore Brown's discharge bars Irby from pursuing the negligent misrepresentation claim.  Accordingly, Brown is entitled to judgment as a matter of law on Claim No. 4: Fraudulent and Negligent Misrepresentation.

The allegations underlying Irby's final state law claim, for breach of fiduciary duty, duplicate those set forth in support of its § 523(a)(4) claim, and any debt arising from those circumstances will be excepted from the discharge to the extent allowed by § 523(a)(4). Claim No. 5: Breach of Fiduciary Duty is therefore redundant and should be stricken.[62]

In addition, to the extent that Irby's state law claims are barred by Brown's discharge, all fees and expenses sought in Claim No. 6 of the Amended Complaint are likewise discharged.

**Conclusion**

Brown's Motion for Partial Judgment on the Pleadings is granted.  A partial judgment will be entered forthwith in favor of Brown on Irby's § 523(a)(2) claim and on Non-Bankruptcy Claim Nos. 1, 2, 3, 4, and 6.

**SO ORDERED** this 3rd day of July, 2013.

DANA L. RASURE
UNITED STATES BANKRUPTCY JUDGE

---

[61]See Bullock v. BankChampaign, N.A., 133 S.Ct. 1754, 1759-61 (2013) (proof of culpable state of mind required to except debt from discharge under § 523(a)(4)); DSC Nat'l Properties, LLC v. Johnson (In re Johnson), 477 B.R. 156, 168-72 (B.A.P. 10th Cir. 2012) (creditor must establish scienter, or a subjective intent to deceive, in order to prevail on a claim under § 523(a)(2)).

[62]See Fed. R. Civ. P. 12(f) (made applicable to this proceeding by Bankruptcy Rule 7012(b)) (court may strike redundant matters).